```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JENNIFER J. AMES,              :
       Plaintiff
                               :

       vs.                     :   CIVIL NO. 1:CV-06-2214

MICHAEL J. ASTRUE,             :      (Judge Caldwell)
Commissioner of Social
Security,                      :   (Magistrate Judge Mannion)
       Defendant
```

*M E M O R A N D U M*

I.  *Introduction*

    Plaintiff, Jennifer J. Ames, filed this appeal under 42 U.S.C. § 405(g) seeking review of the decision of defendant, Michael J. Astrue, the Commissioner of Social Security, denying her application for supplemental security income under the Social Security Act. *See* 42 U.S.C. §§ 1381-1383f. We are considering Plaintiff's objections to the report and recommendation of the magistrate judge, which recommends that we deny the appeal.

    Plaintiff argues she is disabled from diabetes insipidus, adrenal insufficiency, depression and hypothyroidism. Chiefly, she claims that her diabetes insipidus causes excessive urination at times even with medication and that her hypothyroidism and adrenal insufficiency cause fatigue that

requires her to often nap three to four hours daily. As a result, she is unable to work.

She makes the following objections to the magistrate judge's report. First, the magistrate judge erred in deciding that the ALJ correctly assessed her usual daily activities, mainly, in the ALJ's rejection of her fatigue, inability to control her urination, and the extent of her depression. Second, the magistrate judge erred in deciding that the ALJ's hypothetical question to the vocational expert included all of Plaintiff's impairments and limitations.

After review of the objections, the briefs on appeal and the record, we agree with an argument that Plaintiff made on appeal, that the ALJ failed to provide a specific discussion of the evidence that led him to decide that Plaintiff's subjective complaints of disabling symptoms were against "the great weight of the documentary medical evidence," as the ALJ put it.

The case must therefore be remanded on that basis alone, but before we do so we will request additional briefing on another issue emphasized for the first time in Plaintiff's objections to the magistrate judge's report. It is an issue that arose in the hearing before the ALJ but which was not explored at that time - Plaintiff's inability to afford her medications and if so, whether this makes her disabled under the act because

without the medications she apparently cannot function at all, and may indeed die if they are not provided.

II.     *Background*

    A.     *Hearing Testimony*

The magistrate judge's report provides a comprehensive background. We provide here only a synopsis. Plaintiff was diagnosed with Cushing's syndrome as the result of an adenoma on her pituitary gland. In November 2002, at the age of seventeen, she underwent two operations to remove any adenomas from the gland. In the process, the gland was destroyed. As an aftereffect of the surgery, Plaintiff suffers from diabetes insipidus, adrenal insufficiency, ovarian failure, hypothyroidism, and hypopituitarism. She also has a growth hormone deficiency.

At the time of her disability hearing in March 2006, Plaintiff was a 21-year-old college student. She testified that the diabetes insipidus causes excessive urination, and she takes a drug called DDAVP for this. However, the drug wears off at irregular times during the day. When she takes another dose, it takes about an hour for it to take effect, and during this time she must frequently use the bathroom. Hypothyroidism and adrenal insufficiency cause fatigue. She takes Synthroid for the

hypothyroidism and Cortef for adrenal insufficiency, but testified that she often must sleep three to four hours daily on three to four days during the workweek. She takes Wellbutrin for her depression. She also complained about excessive diarrhea and constipation, but said her main concerns about the workplace were being able to use the bathroom and her fatigue.

Plaintiff's financial inability to obtain her medications came out in regard to her testimony concerning her emotional condition. She testified to concern about obtaining her medications since she had no private health insurance and only had access to the medications because Pennsylvania was covering her under medicaid while her application for supplementary security income was pending. (Record, 304.)

A medical expert also testified. Basically, the thrust of his testimony was that the sequelae from her operations have left her with a low thyroid and suffering from diabetes insipidus but that these conditions are alleviated by her medications, and any difficulties she was encountering would normally be handled in a trial-and-error way by adjusting the dosage and frequency of administration. (Record, 295-96.)

Plaintiff's attorney questioned the physician about the effect of Plaintiff's inability to pay for her prescriptions. The expert replied that if she could not take them, it "literally could be lethal, a lethal disease." (Record,

293.) He also said that "if her adrenal failed . . . it could induce a very considerable crisis." (Record, 294.)

A vocational expert (VE) also testified. The ALJ asked the expert a hypothetical question about jobs Plaintiff could do, which assumed that Plaintiff could lift and carry twenty pounds occasionally, ten pounds frequently; could stand and walk for two hours a day; sit for six hours; and should avoid climbing, balancing, temperature extremes; and hazards like unprotected heights. The VE responded that Plaintiff could in part be a data-entry clerk, an appointments clerk, a telecommunicator, a dispatcher, a statistical clerk. When asked a hypothetical that assumed, as Plaintiff testified, that she often had to take an hour some days to have access to the bathroom, the VE testified that it would disqualify her from work. When asked by Plaintiff's attorney about the need to nap for three to four hours per day, the VE said this also would prevent her from being hired.

    B.   *The ALJ's Decision*

Under 20 C.F.R. § 416.920(a)(4), the ALJ has to go through a five-step process in evaluating a claim for supplemental security income. First, the ALJ has to determine if the claimant is engaged in substantial gainful activity. If she is, she is not disabled. Second, if the claimant is not

5

gainfully employed, the ALJ must determine if she is suffering from a severe impairment or combination of impairments. If so, the ALJ moves to the third step and determines if the "impairment(s) meets or equals one of [the] listings" of impairments "in appendix 1 of sub-part P of part 404 of this chapter." *Id.*, § 416.920(a)(4)(iii). If the claimant meets or equals the list of impairments, the claimant will be found disabled. If not, the fourth step is an assessment of the claimant's residual functional capacity and whether she can perform her past relevant work. If she cannot perform that work, to find that she is not disabled, the ALJ must demonstrate at the fifth step that other jobs exist in significant numbers in the national economy that the claimant is able to perform, consistent with her medically determinable impairments, functional limitations, age, education and work experience. *Id.*, § 416.920(a)(4)(v); § 416.960(c)(2).

At the first step, the ALJ decided that Plaintiff's attendance at college was substantial gainful activity and should disqualify her from benefits.[1] He nonetheless proceeded through the next four steps. At the second step, and accurately relating the medical evidence, he decided that her depression was not a severe mental impairment because:

---

[1] The government has not argued that this finding at the first step is dispositive, so we do not address it further.

> her treating psychiatrist noted that the
> claimant was agreeable to talk therapy and
> did not recommend the use of any
> psychotropic medications (Exhibit 19). Her
> treating psychiatrist . . . indicated that
> the claimant had a flat affect, but was able
> to smile and answer all questions
> appropriately. He indicated that her thought
> processes were logical, and that she had no
> suicidal ideation, homicidal ideation, or
> hallucinations.

(Doc. 7, ALJ's decision, R. 21.) At the third step, he provided a specific analysis of why Plaintiff's impairments did not meet or equal a listed impairment.

As part of his analysis at the fourth step, the ALJ said this about Plaintiff's subjective complaints: "The undersigned found the claimant's testimony with regard to her symptoms, including pain, not worthy of complete acceptance because it was inconsistent with, and unsupported by, the great weight of the documentary medical evidence." (Record, 22.) At this step, the ALJ also rejected her treating physician's opinion that she was disabled as follows:

> As for the opinion evidence, the
> undersigned . . . rejects, and does not
> accept, the opinions expressed by Dr.
> Kenneth A. Sobel on a Pennsylvania
> Department of Public Welfare Employability
> Re-assessment form, dated July 6, 2005
> (Exhibit 18F) because those opinions are not
> supported by reference to particular
> diagnostic test results, or clinical
> observations. Moreover, the question of
> disability, which is the ultimate issue in
> this matter, is reserved to the Commissioner
> . . . .

7

(*Id.*, 22-23.) Accordingly, the ALJ found that Plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally, lift ten pounds frequently, stand and walk for two hours a day, and sit for six hours a day in a job where she would not be exposed to extremes of temperature, humidity, high unprotected heights, dangerous machinery and would not be required to balance, climb ramps, ropes, ladders or scaffolding.

With this residual functional capacity, at the fifth step, he decided Plaintiff could be a data-entry clerk, an appointments clerk, a telephone dispatcher and a statistics clerk. He therefore ruled she was not disabled under the act.

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. The request was denied, thus making the ALJ's decision the decision of the Commissioner.

III. *Discussion*.

    A. *Relevant Legal Principles*

We must uphold the Commissioner's decision if substantial evidence supports his conclusion that Plaintiff is not disabled. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoted case omitted). "It is 'more than a

8

mere scintilla, but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoted case omitted).

It follows "that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Put another way, we cannot reverse the Commissioner's decision simply because we might "have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Nor can we rely on arguments made by the Commissioner for the first time on appeal. *See Foley v. Barnhart*, 432 F. Supp. 2d 465, 477 (M.D. Pa. 2005) ("it is not for Defendant to make an after-the-fact argument to support the ALJ's decision")(citing *Fargnoli*, 247 F.3d at 42 n.6). Neither can we rely on arguments made by the magistrate judge. *Terwilliger v. Chater*, 945 F. Supp. 836, 843-44 (E.D. Pa. 1996).

However, we have the "responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000)(quoted case omitted)(brackets in original).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704

(3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707; *see also Fargnoli*, *supra*, 247 F.3d at 41. "Conclusory statements regarding the evidence or the condition of the claimant are not sufficient." *Yensick v. Barnhart*, 245 Fed. Appx. 176, 180 (3d Cir. 2007)(nonprecedential)(citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000)).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales*, *supra*, 225 F.3d at 317 (quoted case omitted). "[I]n the absence of contradictory medical evidence, an ALJ in a social security case must accept the medical judgment of a treating physician." *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991)(citing *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988)). However, the opinion of the treating physician that a plaintiff is disabled can be rejected if it is conclusory or not supported by medical evidence. *Jones*, 954 F.2d at 129.

The ALJ has an obligation to create a complete record. *Boone v. Barnhart*, 353 F.3d 203, 208 n.11 (3d Cir. 2003). Consequently, even when a claimant is represented by counsel, the ALJ must follow up on counsel's questioning if counsel raises an issue that should be explored. *Id.; see also Rutherford*, *supra*, 399 F.3d at 557.

   B.  *Plaintiff's Objections*

As noted, Plaintiff made two objections to the magistrate judge's report. Her first objection is that the magistrate judge erred in deciding that the ALJ correctly assessed her usual daily activities, mainly, in the ALJ's rejection of her fatigue, inability to control her urination, and the extent of her depression. She also mentions the ALJ's failure to accept her claims of diarrhea and constipation. Her second objection is that the magistrate judge erred in deciding that the ALJ's hypothetical question to the vocational expert included all of Plaintiff's impairments and limitations.

We agree with the Commissioner that the second objection is basically a repeat of the first since if the ALJ correctly assessed Plaintiff's subjective complaints about her limitations, he did not err in the hypothetical question that excluded these limitations. *See Rutherford*, *supra*, 399 F.3d at 554 n.8. However, we cannot resolve the first objection because

11

the ALJ made only a conclusory finding as to Plaintiff's subjective complaints. His analysis of those complaints was limited to the following: "The undersigned found the claimant's testimony with regard to her symptoms, including pain, not worthy of complete acceptance because it was inconsistent with, and unsupported by, the great weight of the documentary medical evidence." Contrary to the Commissioner's argument, this does not comply with *Cotter*'s requirement that the ALJ must discuss the evidence specifically and indicate the evidence he accepted, the evidence he rejected and his reasons for doing so. *Cotter*, 642 F.3d at 706-07. We add that this defect cannot be cured by arguments made on judicial appeal by the Commissioner, the magistrate judge or the court. Hence, arguments made after the fact by the Commissioner and the magistrate judge that support the ALJ's decision are irrelevant.

This case must therefore be remanded so that the ALJ can explain why he rejected Plaintiff's subjective complaints, with specific citation to the record. We have one exception, Plaintiff's complaint of suffering from severe depression. As noted above, the ALJ sufficiently explained why he found that Plaintiff's depression was not a severe impairment, based on the opinion of her treating psychiatrist.[2]

---

[2] We also agree with the magistrate judge that the ALJ adequately explained his rejection of the opinion of Dr. Sobel,

12

Before we remand, however, we will request additional briefing on another issue, Plaintiff's inability to afford her medications and if so, whether this makes her disabled under the act. It appears that "[t]he Commissioner may not deny benefits to a claimant if a condition that would be a severe impairment is remediable, but the claimant cannot afford the necessary medical treatment." *Meroki v. Halter*, 2001 WL 668951, at *10 (N.D. Ill.)(citing *Gamble v. Chater*, 68 F.3d 319, 320-21 (9th Cir. 1995), and Social Security Ruling 82-59).

This issue was touched on by Plaintiff's counsel at the hearing, and we think the ALJ had a duty to develop it. *See Boone, supra,* 353 F.3d at 208 n.11. Plaintiff's medications help her to function, but she is allegedly only receiving them because she is applying for disability benefits, being unable to financially afford them otherwise. Absent the medication, it seems that she would not be able to function at all, indeed might die.

This might be an alternative basis for a finding of disability, and we think it should be briefed before further proceedings before the ALJ. Accordingly, before remanding this case, we will ask for further briefing on this issue.

---

Plaintiff's treating physician.

13

We will issue an appropriate order.

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: January 22, 2008

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


JENNIFER J. AMES,                  :
        Plaintiff
                                   :

        vs.                        :    CIVIL NO. 1:CV-06-2214

MICHAEL J. ASTRUE,                 :       (Judge Caldwell)
Commissioner of Social
Security,                          :    (Magistrate Judge Mannion)
        Defendant
```

*O R D E R*

AND NOW, this 22nd day of January, 2008, upon consideration of the magistrate judge's report (doc. 13), dated September 20, 2007, the objections thereto (doc. 14), and independent review of the record, it is ordered that:

>    1.  Within twenty days of the date of this order, the defendant Commissioner shall file a brief addressing the issue whether Plaintiff's inability to afford her medications, if true, would render her disabled under the act and whether this issue should be addressed on remand.
>
>    2. Plaintiff may file a brief in opposition within fifteen days of receipt of Defendant's brief.
>
>    3. Defendant shall have ten days thereafter to file a reply brief.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge